## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## JACKSON DIVISION

| | |
|---|---|
| ELIZABETH SANDERS,     ) | |
| ) | |
|   Plaintiff         ) | |
| ) | **CIVIL ACTION NO.:** 3:25-cv-29-CWR-ASH |
| vs.              ) | |
| ) | *Jury Trial Demanded* |
| SHARKNINJA OPERATING,   ) | |
| LLC,               ) | |
| ) | |
|   Defendant.     ) | |

## COMPLAINT

COMES NOW Plaintiff Elizabeth, by and through her undersigned counsel of record, and hereby file this personal injury, product liability action against Defendant SharkNinja Operating, LLC ("SharkNinja" or "Defendant"). Plaintiff alleges and states as follows.

## NATURE OF THE CASE

1.      This is a product liability action seeking recovery for substantial personal injuries and damages suffered by Plaintiff after Plaintiff was seriously injured by a "Ninja Foodie" pressure cooker (hereafter generally referred to as "the pressure cooker").

2.      Defendant SharkNinja Operating, LLC manufactures, markets, imports, distributes and sell a wide-range of consumer products, including the subject "Ninja Foodie" pressure cooker at issue in this case.

3.   On or about June 15, 2024, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid suddenly and unexpectedly exploding off the pressure cooker's pot during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff.

4.   As a direct and proximate cause of Defendant's conduct, Plaintiff incurred significant and painful bodily injuries, medical expenses, wage loss, physical pain, mental anguish, and diminished enjoyment of life.

## THE PARTIES

5.   Plaintiff was at all relevant times a resident of the City of Jackson, County of Rankin, State of Mississippi.

6.   Defendant SharkNinja designs, manufactures, markets, imports, distributes, and sells a variety of consumer products, including the subject "Ninja Foodie" pressure cookers. Defendant SharkNinja is a Limited Liability Company incorporated in the State of Delaware and has a principal place of business located at 89 A St. #100, Needham, MA 02494. Defendant SharkNinja has a registered service address of The Corporate Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

2

7.    Defendant SharkNinja is accordingly deemed a citizen of the states of Massachusetts and Delaware for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

8.    This Court has diversity jurisdiction over the claims in this complaint because the amount in controversy exceeds the sum of $75,000.00 and is between citizens of different states.  28 U.S.C. §1332(a)(1).

9.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 as all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

10.    Venue is also proper in this Court pursuant to 28 U.S.C. §1391 because Defendant SharkNinja has sufficient minimum contacts with the State of Mississippi and intentionally availed itself of the markets within Mississippi through promotion, sale, marketing, and distribution of its products.

## FACTUAL BACKGROUND

11.    Defendant Defendant SharkNinja is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing and selling the pressure cookers at issue in this litigation.

12.     Defendant SharkNinja warrants, markets, advertises, and sells it spressure cookers as a means to cook "easy" and "convenient" allowing consumers to "cook 70% faster than traditional cooking methods."[1]

13.     Defendant SharkNinja boasts that its pressure cookkers have "14 safety features" which purport to keep the user safe while cooking.[2]

14.     For example, according to the Owner's Manual accompanying the individual unit sold, the pressure cookers are equipped with a "safety feature" that prevents the lid from unlocking until "the unit is completely depressurized."[3]

15.     By reason of the foregoing acts or omissions, the above-named Plaintiff and/or her family purchased the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

16.     On or about June 15, 2024, Plaintiff was using the pressure cooker designed, manufactured, marketed, imported, distributed, and sold by Defendant SharkNinja for its intended and reasonably foreseeable purpose of cooking.

17.     While the pressure cooker was in use for cooking, the pressure cooker;s lid unexpectedly and suddenly blew off the pot in an explosive manner. The contents

---

[1] https://www.ninjakitchen.com/pressure-cookers/ (last accessed January 25, 2022).
[2] *Id.*
[3] Attached hereto as "Exhibit A" and incorporated by reference is the "Ninja Foodi 10-in-1 8 Qt XL Pressure Cooker OS400 Series" Owner's Manual. See, e.g. pgs. 15, 23.

4

of the pressure cooker were forecefully ejected out of the pot and onto Plaintiff, causing severe disfiguring burns.

18.    Plaintiff and her family used the pressure cooker for its intended purpose of preparing meals and did so in a manner that was reasonable and foreseeable by Defendant SharkNinja.

19.    However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by Defendant SharkNinja in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable, and proper use of cooking food with the product, thereby placing the Plaintiff, her family, and similar consumers in danger while using the pressure cooker.

20.    Defendant SharkNinja's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consuimers because the lid can be rotated and opened while the unit remains pressurized.

21.    Further, Defendant SharkNinja's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

22.    Economically feasible safer alternative designs were available at the time of manufacture that would have prevented the pressure cooker's lid from being rotated and opened while pressurized.

23.    As a direct and proximate result of Defendant SharkNinja's concealment of such defects, its failure to warn consuimers of such defects, its negligent misrepresentations, its failure to remove a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries.

24.    Consequently, the Plaintiff in this case seeks compensatory damages resulting from the use of Defendant SharkNinja's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, lost wages, physical pain, mental anguish, diminished enjoyment of life, and other damages compensable under Mississippi law.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

25.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

6

26. At the time of Plaintiff's injuries, Defendant's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

27. Defendant's pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendant.

28. Plaintiff did not misuse or materially alter the pressure cooker.

29. The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

30. Further, a reasonable person would conclude that the possibility of and seriousness of harm outweighs the burden or cost of making the pressure cookers safe. Specifically:

    a. The pressure cookers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

    b. The seriousness of the potential burn injuries resulting from the product drastically outweigh any benefit that could be derived from the product's normal, intended use;

    c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

    d. Defendant failed to warn and place adequate warnings and instructions on the pressure cookers;

    e. Defendant failed to adequately test the pressure cookers; and

f. Defendant failed to market an economically feasible alternative design that would have prevented the Plaitniff's injuries and damages, despite the existence of such alternatives.

31. Defendant's actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

32. Plaintiff incorporates by reference each preceeding and succeeding paragraph as though set forth fully at length herein.

33. Defendant had a duty of reasonable care to design, manufactuire, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.

34. Defendant failed to exercise ordinary care in the manufacture, sale, warning, quality assurance, distribution, advertising, promotion, sale, and marketing of its pressure cookers in that Defendant knew or should have known that the pressure cookers created a high risk of unreasonable harm to the Plaintiff and like consumers.

35.    Defendant was negligent in the design, manufacture, advertising, warning, marketing, and sale of its pressure cookers in that, among other things, they:

      a.  Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

      b.  Placed an unsafe product into the stream of commerce;

      c.  Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and

      d.  Were otherwise careless or negligent.

36.    Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued (and still today continue) to market the pressure cookers to the public.

**WHEREFORE**, Plaintiff demands judgment against Defendants for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT III**
**<u>BREACH OF EXPRESS WARRANTY</u>**

37.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

38.    Defendant expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff. Moreover,

9

Defendant expressly warranted that the lid of the pressure cooker could not be removed while the unit remained pressurized. For example, Defemdmat c;ao,ed that the pressure cookers are equipped with a "safety feature" that prevents the lid from unlocking until "the unit is completely depressurized."

39.    Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

40.    Defendant marketed, promoted, and sold its pressure cookers as a safe product, complete with "safety feature[s]."

41.    Defendant's pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

42.    Defendant breached its express warranties in one or more of the following ways:

   a. The pressure cookers as designed, manufactured, sold, and/or supplied by the Defendant were defectively designed and placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition;

   b. Defendant failed to warn and/or place adequate warnings and instructions on its pressure cookers;

   c. Defendant failed to adequately test its pressure cookers; and

10

d. Defendant failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their pressure cookers.

43. Plaintiff's injuries were the direct and proximate result of Defendant's breach of its express warranties.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

44. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

45. Defendant manufactured, supplied, and sold its pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently, and safely.

46. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

47. Defendant's pressure cookers were not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

48. The Plaintiff in this case reasonably relied on Defendant's representations that its pressure cookers were a quick, effective, and safe means of cooking.

49. Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V
## BREACH OF IMPLIED WARRANT OF MERCHANTABILITY

50. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

51. At the time Defendant marketed, distributed, and sold its pressure cookers to the Plaintiff in this case, Defendant warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

52. Members of the consuming public, including consumers such as the Plaintiff, were intended third-party beneficiaries of the warranty.

53. Defendant's pressure cookers were not merchantable and fit for their ordinary purposes, because they had the propensity to lead to the serious personal injuries described in this Complaint.

54.    The Plaintiff in this case and/or her family purchased and used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

55.    Defendant's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT VI**
**PUNITIVE DAMAGES**

56.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

57.    Defendant designed, developed, manufactured, marketed, assembled, tested, distributed, sold, and placed the subject pressure cooker into the stream of commerce.

58.    Before the incident made the basis of this Complaint, Defendant was aware of the defects and dangerous conditions that exist with the subject pressure cooker.

59.    In fact, Defendant is aware of multiple other incidents of terrible burns from Defendant's pressure cookers throughout the country similar to the foregoing

matter, resulting in severe, permanent, disabling and disfiguring injuries to consumers, which it knew about before the subject incident took place.

60.    Despite being on notice of other incidents substantially similar to the foregoing matter, involving the same or similar products and the same or similar harm to consumers, Defendant consciously and intentionally failed to take any proper action to warn, recall, remedy, or otherwise mitigate the risk of harm to the public generally, or Plaintiffs in particular from the use of its product.

61.    Defendant had actual knowledge that the subject pressure cooker posed a severe danger and threat of serious injury to consumers but did not warn or adequately inform or educate retailers, wholesalers, or the public of said dangers, but instead, continued to sell the products for profit and allowed injuries to persist.

62.    Defendant engaged in intentional misconduct when they put an unsafe product on the market without adequate testing; without a failure mode effect analysis for the production and design of the subject pressure cooker; without quality controls in place for evaluating and testing moisture or temperature; or without testing being conducted to verify performance.

63.    Defendant withheld information about their fraudulent conduct as the pressure cookers began to fail, causing injury and death to consumers.

64.    Defendant knew that their concealment and misrepresentations of said hazardous conditions and defects had a high probability of causing injury or damage

14

because the defective pressure cookers remain in the stream of commerce and continue to be used by consumers who believed the product to be safe.

65.    Defendant intentionally withheld information about the pressure cooker defect from its customers to protect their profits.

66.    These acts and omissions of Defendant show actual malice and/or gross negligence which evinces a willful, wanton, or reckless disregard for the safety of others, as well as actual fraud.

67.    Plaintiff, therefore, pursuant to Mississippi Code § 11-1-65, is entitled to recover punitive damages against Defendant in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays and respectfully demands the following:

(a)    That summons and service be perfected upon the Defendant requiring the Defendant to be and appear in this Court within the time required by law and to answer this Complaint;

(b)    That Plaintiff be awarded compensatory damages against Defendant for their physical and emotional pain and suffering, disfigurement, loss of enjoyment of life, and any other like damages available under Mississippi law in such amounts as may

15

be shown by the evidence and determined by the jury in their enlightened conscience;

(c)     That Plaintiff be awarded special damages against Defendant for her past, present, and future medical expenses; and past, present and future loss of income and earnings in such an amount as may be shown by the evidence and proven at trial;

(d)     That Plaintiff be awarded punitive damages without limitation or cap against Defendant in such an amount as may be shown by the evidence and determined by the jury in their enlightened conscience;

(e)     That Defendant be charged with all Court costs attributable to this action including attorney's fees and such other costs reasonably incurred in the prosecution and trial of this case; and

(f)     That Plaintiff be granted such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 13th day of January, 2025.

/s/ T. Preston Moore II
**T. Preston Moore II**
*Pro Hac Vice Forthcoming*

**Beasley Allen Law Firm**
Overlook II
2839 Paces Ferry Road SE
Suite 400
Atlanta, Georgia 30339
Telephone: (404) 751-1162
Facsimile: (888) 212-9702
Email: preston.moore@beasleyallen.com

*Attorneys for Plaintiff*


/s/ Patrick S. Wooten
**Patrick S. Wooten (MSB# 9779)**
**Richard Schwartz & Associates, P.A.**
162 E. Amite Street (39201)
P.O. Box 3949
Jackson, Mississippi 39207
Telephone: (601) 988-8888
Facsimile: (601) 949-7929
Email: pwooten@1call.org
*Attorney for Plaintiff*